UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAMELA C. SCHOFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-1197-TWP-DML |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Pamela C. Schofield ("Ms. Schofield") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I.   BACKGROUND

**A.   Procedural History**

On April 28, 2011, Ms. Schofield protectively filed an application for DIB, alleging a disability onset date of May 1, 2008, due to rheumatoid arthritis, fibromyalgia, chronic low back pain, degenerative disc disease, lung cancer, bleeding ulcers, spastic colon, hypertension, chronic migraines, carpal tunnel syndrome, anxiety, and depression. Her application initially was denied on August 5, 2011, and again on reconsideration on November 15, 2011. Ms. Schofield filed a written request for a hearing. On October 18, 2012, a hearing was held before Administrative Law Judge Charles W. Ardery (the "ALJ"). On March 1, 2013, the ALJ denied Ms. Schofield's application for DIB. On April 6, 2013, Ms. Schofield requested review by the Appeals Council.

On May 20, 2014, the Appeals Council denied Ms. Schofield's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On July 18, 2014, Ms. Schofield filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

At the time of her alleged disability onset date, Ms. Schofield was 48 years old, and she was 53 years old at the time of the ALJ's decision. She graduated from high school and completed vocational school for cosmetology. Prior to the alleged onset of her disability, Ms. Schofield worked as a hairdresser for over twenty-eight years and briefly as a hospital housekeeper from 2006 to 2008. Ms. Schofield has not worked full time since 2008.

At the time of her application, Ms. Schofield suffered from the effects of lung cancer, rheumatoid arthritis, fibromyalgia, degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, chronic low back and neck pain, headaches, and bleeding ulcers. She also had been treated for anxiety and depression. Ms. Schofield takes several prescription medications to manage her physical pain and treat her mental health challenges.

Ms. Schofield has dealt with migraines and neck and back pain for many years. She asserts that her pain became debilitating in 2008, leading to an inability to work. The medical record contains evidence that Ms. Schofield received treatment for back and neck pain as early as 2005. Her medical records show that Dmitry Arbuck, M.D. ("Dr. Arbuck") performed a complete physical evaluation of Ms. Schofield in October 2005 (Filing No. 12-17 at 12). Dr. Arbuck diagnosed Ms. Schofield with degenerative disc disease of the cervical and lumbar spine, neck and back pain, migraines, headaches, depression, osteoarthritis, and hypertension. Dr. Arbuck also found that Ms. Schofield's diagnosis of fibromyalgia was questionable (Filing No. 12-17 at 13).

In November 2005 and April 2006, Ms. Schofield was referred to have an examination of her lumbar and cervical spine. Views of her cervical spine showed evidence of spondylosis and degenerative disc disease at vertebra C5-6 but no evidence of instability. Views of Ms. Schofield's lumbar spine showed mild disc-space narrowing in the lower dorsal and upper lumbar spine; however, all other indications were normal with no evidence of compression or malalignment (Filing No. 12-13 at 2–3).

Ms. Schofield was referred to the Central Indiana Surgery Center for her lower back and neck pain. In May 2006, Gary H. Wright, M.D. ("Dr. Wright") placed facet joint blocks at vertebrae L3-4, L4-5, and L5-S1 to relieve her neck and back pain (Filing No. 12-16 at 35). The injections seemed to reduce the pain but offered only temporary relief. By July 2006, Ms. Schofield complained that the pain in her neck and back, as well as her migraines, had worsened (Filing No. 12-17 at 10).

Throughout the following months, Ms. Schofield's back and neck pain and headaches fluctuated, and health care providers attempted to treat the issues with continued medication and injections. She continued with a Methadone and Norco pain medication regimen to manage the discomfort. An October 2012 MRI[1] report of the lumbar spine showed an annular disc bulge at L2-L3 and L3-L4 levels, which produced very mild stenosis, as well as facet osteoarthritis at L3-L4 through L5-S1 levels (Filing No. 12-17 at 30).

In early 2007, Ms. Schofield began experiencing increasing pain and numbness in both of her wrists. In April 2007, she was referred to Robert Gould, D.O. ("Dr. Gould"), a pain management specialist, for a consultation regarding carpal tunnel syndrome. Ms. Schofield complained of pain that was ongoing for about five years. She reported that overuse of her hands

---

[1] This MRI of Ms. Schofield's spine was taken after the administrative hearing with the ALJ and after March 31, 2012, the last date that Ms. Schofield was insured under the Act.

made the pain worse while heat therapy, topical pain relievers, and wearing splints were helpful in easing the pain (Filing No. 12-8 at 71).  Neurological examination by Dr. Gould revealed that Ms. Schofield had symptoms of carpal tunnel syndrome including weakness in a hand muscle in each hand and diminished sensation to light touch in some fingers on her right hand.  She presented positive with Phalen's maneuver and Tinel's sign, indicating carpal tunnel syndrome.  However, further examination showed normal muscle strength and sensation in the left hand and most of the right hand and a full range of motion in the wrists and arms (Filing No. 12-8 at 72).  Ms. Schofield was treated with carpal tunnel injections and was encouraged to continue using wrist splints and stretches. *Id.*  At a follow up appointment in May 2007, Ms. Schofield reported that her pain was "doing pretty good right now," and it was stable (Filing No. 12-10 at 71).

By November 2007, the pain from carpal tunnel syndrome had returned in Ms. Schofield's wrists and hands (Filing No. 12-10 at 86).  She was treated with another round of injections and reported a 75% improvement in her wrists and arms (Filing No. 12-8 at 51).  Again, after some months, Ms. Schofield's pain had returned; however, she had lost her insurance coverage and could not pay for further injections or a recommended surgical procedure.

Although treatment notes from 2009 through 2011 show consistent complaints about wrist pain, they also show that Ms. Schofield routinely was able to manage the pain with prescription medications (Filing No. 12-8 at 13–28).  The record also shows that, despite continuing hand pain, she continued to work as a hair stylist on at least a part time basis during this time (Filing No. 12-11 at 17, 26).  Test results from an October 2012 EMG[2] nerve conduction study showed mild median neuropathy in the right wrist (Filing No. 12-17 at 27).  The most recent medical examination of Ms. Schofield's hands showed signs of carpal tunnel syndrome and some decreased

---

[2] This EMG nerve conduction study was performed after the administrative hearing with the ALJ and after March 31, 2012, the last date that Ms. Schofield was insured under the Act.

4

muscle and grip strength but normal skin sensitivity and normal gross and fine finger manipulative ability (Filing No. 12-17 at 34).

Throughout the treatment notes in the record, it is noted that Ms. Schofield complained of symptoms of fibromyalgia, which contributed to her other physical challenges and affected her whole body (Filing No. 12-6 at 38). She explained that some days she cannot be touched or brushed up against without feeling pain. *Id.* Several health care providers have treated Ms. Schofield for her symptoms stemming from fibromyalgia. She frequently has complained of "flare-ups" and problems with arthritic-like symptoms and stiff joints as well as tenderness and swelling all over her body. Despite consistent reports of some limited range of motion and pain, Ms. Schofield continually told doctors that she could manage reasonably well on her medication regimen.

In January 2011, Ms. Schofield presented for a CT chest scan because she had numerous episodes of pneumonia throughout the prior years. The CT scan indicated that there was a chance of lung cancer, and a bronchoscopy was recommended to further investigate (Filing No. 12-7 at 44). The bronchoscopy revealed cancerous cells that were identified as neuroendocrine carcinoma (Filing No. 12-7 at 47). Ms. Schofield underwent surgery—resection of the lesion in her right lung—on March 1, 2011. Following the surgery, she complained of severe pain in her chest for several months. She also continued to complain of neck and back pain as well as headaches.

In July 2011, Ms. Schofield had a consultative medical examination with Nauman Salim, M.D. ("Dr. Salim"). She reported to Dr. Salim that she had trouble with standing, walking, climbing, and lifting weight above five pounds (Filing No. 12-11 at 48). It was noted that Ms. Schofield arrived to the examination without any assistive device, her gait and posture were within normal limits, and she was able to heel and toe walk and tandem walk without difficultly. Further,

5

she was able to squat and get up from squatting without difficulty. Her straight leg raise test was negative bilaterally. She had no difficulty getting on and off the examination table (Filing No. 12-11 at 49–50). Ms. Schofield's joints were normal with no effusions or inflammation. She had 5/5 strength in all extremities, normal sensory function, and normal fine finger skills and gross manipulation (Filing No. 12-11 at 50). Dr. Salim opined that Ms. Schofield should be able to work part time or full time with appropriate breaks. *Id.*

In addition to her physical impairments, Ms. Schofield also suffers from anxiety and depression (Filing No. 12-11 at 58). She was prescribed Celexa to control her depression as early as 2005 (Filing No. 12-17 at 17). In July 2011, Ms. Schofield underwent a psychological evaluation with Michael O'Brien, Psy.D. ("Dr. O'Brien"). Dr. O'Brien determined that Ms. Schofield had mild recurrent depression and adjustment disorder with anxiety. He assigned her a global assessment of functioning score of 65 (Filing No. 12-11 at 58).

At the administrative hearing on October 18, 2012, Ms. Schofield testified that she has not worked full time since 2008 due to her chronic back pain, fibromyalgia, and carpal tunnel syndrome (Filing No. 12-2 at 46–50). She also testified she experiences episodes of migraine headaches that last many days, swollen and tender joints, and depression and anxiety. Ms. Schofield testified that she could sit for forty-five minutes to an hour, stand in one place for a minute or two, and walk about a half a block before she is in pain. However, she also testified that she can walk a quarter of a mile. She stated that she could not carry her granddaughter who weighs twenty-eight pounds or lift a gallon of milk.

At the hearing, medical expert Dr. Lee Fischer ("Dr. Fischer") testified that based upon a review of the medical evidence, Ms. Schofield would be capable of light physical exertional work. (Filing No. 12-2 at 67). He agreed that Ms. Schofield's fibromyalgia and degenerative disc disease

provided a foundation for her pain complaints, but he did not see in the record how and when it was ever diagnosed or whether she met the recognized criteria.

Following the administrative hearing, the ALJ ordered an independent consultative examination with Daniela Djodjeva, M.D. ("Dr. Djodjeva") (Filing No. 12-17 at 32). Dr. Djodjeva's report indicated that Ms. Schofield maintained a normal gait and posture, and she had no problem getting on and off the examination table. She had painful and decreased range of motion in her neck, lower back, hips, and knees but normal range of motion in both shoulders. Ms. Schofield had normal gross and fine finger manipulation in both hands with no effusions, deformity, or tenderness. Signs indicated carpal tunnel syndrome in the right hand. She was not able to squat but was capable of tip toeing and standing on her heels. She had 5/5 muscle strength in all muscles except her hands where her strength was 4/5.

Dr. Djodjeva also completed an "ability to do work-related activities" assessment. In her assessment, Dr. Djodjeva opined that Ms. Schofield was capable of lifting or carrying up to twenty pounds on occasion and walking for twenty minutes at a time for a total of one hour in an eight hour workday. Dr. Djodjeva also opined that Ms. Schofield should never crouch or crawl and should never be exposed to respiratory irritants and temperature extremes (Filing No. 12-17 at 37–42).

As part of her daily activities, Ms. Schofield generally functions independently. She maintains personal hygiene and dresses herself without assistance. Ms. Schofield enjoys reading and watching television. She also grocery shops, visits with friends, plays with her grandchildren, and goes on walks. She is able to cook on occasion and perform many household chores. She also volunteers her time working at a clothing store, similar to a Goodwill, on almost a weekly basis. Her sister testified that Ms. Schofield often misses funerals, weddings and showers due to pain.

However, Ms. Schofield is capable of driving and riding in a car and does so on occasion. She also manages her finances and pays bills.

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the

fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because

9

of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Ms. Schofield met the insured status requirement of the Act through March 31, 2012. The ALJ then began the five-step disability analysis. At step one, the ALJ found that Ms. Schofield had not engaged in substantial gainful activity from May 1, 2008, the alleged onset date of disability, through March 31, 2012, the date last insured under the Act. At step two, the ALJ found that Ms. Schofield has the following severe impairments: fibromyalgia, chronic low back pain, headaches, and carpal tunnel syndrome. The ALJ found that Ms. Schofield has several non-severe impairments, which include depression, anxiety, bleeding ulcers, and lung cancer resection. At step three, the ALJ concluded that Ms. Schofield does not have an impairment or combination of impairments that meets or medically equals one of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Ms. Schofield has an RFC to perform light work with the following limitations:

> lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk each for 2 hours at a time, for a total of 6 hours each in a workday; occasionally reach overhead; frequently perform gross handling and fine finger manipulations; frequently push or pull with the bilateral upper extremities;

>occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; occasionally bend, stoop, crouch, kneel, squat, and crawl; avoid concentrated exposure to temperature extremes, humidity, and respiratory irritants; and avoid all exposure to unprotected heights.

(Filing No. 12-2 at 24–25).

At step four, the ALJ determined Ms. Schofield was unable to perform her past relevant work as a hairdresser or housekeeper. The ALJ relied on testimony from the vocational expert when finding Ms. Schofield's past relevant work exceeded her RFC. At step five, the ALJ determined that jobs exist in significant numbers within the national economy that Ms. Schofield could perform such as office helper, mail clerk, information clerk, and office machine operator. Because there are jobs that Ms. Schofield could have performed, the ALJ found that she was not disabled from the date of her alleged onset of disability through the date last insured under the Act. Thus, the ALJ denied Ms. Schofield's application for DIB.

## IV.  DISCUSSION

Ms. Schofield raises two arguments in her request for judicial review. First, she contends that the ALJ failed to consider the impact of her carpal tunnel syndrome given her treating physician's statements and in light of her fibromyalgia. Second, Ms. Schofield argues that the ALJ failed to fairly consider and weigh the medical opinion of consultative examiner Dr. Djodjeva.

**A.   The ALJ adequately considered the impact of Ms. Schofield's carpal tunnel syndrome and fibromyalgia and her treating physician's opinions concerning these impairments.**

Ms. Schofield argues that the ALJ failed to consider and weigh Dr. Gould's (her treating physician) statements about the impact of her carpal tunnel syndrome on her ability to function (Filing No. 15 at 10). Further, she asserts that the ALJ did not consider her carpal tunnel syndrome in light of her fibromyalgia. *Id*. When determining a claimant's RFC, the ALJ considers the combination of all impairments on the ability to function, including those impairments that do not

11

individually rise to the level of a severe impairment.  20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Upon review of the record and the ALJ's decision, the Court notes the thoroughness of the ALJ's consideration of the evidence and Ms. Schofield's impairments.  The ALJ fully considered the impact of Ms. Schofield's fibromyalgia, chronic low back pain, headaches, and carpal tunnel syndrome and found them to be severe impairments.  He then considered each of these severe impairments, including the fibromyalgia and carpal tunnel syndrome, under the criteria for the Listed Impairments and determined that the impairments, singly and in combination, did not meet or medically equal any Listed Impairment.  The ALJ also thoroughly considered Ms. Schofield's fibromyalgia and carpal tunnel syndrome as well as her other severe and non-severe impairments when fashioning an appropriate RFC.  Consideration of these impairments is reflected in the RFC analysis of his decision.  The ALJ considered Ms. Schofield's aggravating and precipitating factors as well as the opinions of the treating, consulting, and testifying physicians when he limited Ms. Schofield to light work with specific, additional limitations.  He also considered the testimony of Ms. Schofield and her sister.  The ALJ explained the amount of weight he gave to the various opinions and testimony.  He devoted approximately three and a half pages to discussing and analyzing Ms. Schofield's fibromyalgia, carpal tunnel syndrome, and chronic back pain (Filing No. 12-2 at 25–28).

Ms. Schofield asserts that the ALJ failed to consider and weigh statements made by Dr. Gould that the repetitive use of her hands was a precipitating or aggravating factor. However, this assertion ignores the portions of the ALJ's decision that do address Dr. Gould's opinions.  The ALJ acknowledged Dr. Gould's opinion that frequent use of Ms. Schofield's hands exacerbated her symptoms.  This was weighed and factored into his RFC determination.  The ALJ considered

12

not only the opinion of Dr. Gould but also the opinions of the other treating, consulting, and testifying medical professionals and the other objective medical evidence. The ALJ also noted that the decision was based on the fact that Ms. Schofield's impairments were reasonably controlled by medication and that she had worked at least part time while suffering the impairments. It was noted that no treating physician indicated that Ms. Schofield was functionally limited or disabled because of her impairments.

In his RFC analysis, the ALJ found that Ms. Schofield is capable of frequent fine and gross manipulation with her hands despite her carpal tunnel syndrome. This determination was supported by medical evidence from Dr. Salim who found normal strength throughout Ms. Schofield's arms, normal reflex and sensory function, and grossly intact fine finger and gross manipulations. The ALJ also gave great weight to Dr. Fischer's opinion that Ms. Schofield could repetitively use her hands for grasping and fine manipulation. Dr. Fischer testified that he based his opinion on Ms. Schofield's testimony and a review of the medical record that included evidence of her history of fibromyalgia and carpal tunnel syndrome.

The ALJ also took into account an October 2012 EMG study that revealed Ms. Schofield suffered from only mild median neuropathy in the right wrist and no abnormality in the left. Ms. Schofield claims that this study cannot adequately account for the fact that she also suffers from fibromyalgia. However, aside from her speculation, Ms. Schofield has not presented medical evidence or the opinion of a medical professional that supports her claim that the combined effects of the carpal tunnel syndrome and fibromyalgia create a greater impairment than that which was considered by the ALJ. Ms. Schofield's own opinion that a person suffering from carpal tunnel syndrome and fibromyalgia "may be more limited" than the RFC determined by the ALJ is not sufficient to defeat the ALJ's determination, which is supported by substantial evidence. Although

Ms. Schofield does not agree with the ALJ's weighing of evidence and disability determination, the Court may not reweigh the evidence based on personal opinion not supported by medical evidence.

Further, Ms. Schofield asserts that the ALJ failed to consider Dr. Gould's opinion that Ms. Schofield's pain from the carpal tunnel syndrome "is a moderate level of debilitation especially with her job as a hairdresser. When she uses her hands [her pain] is a lot worse." (Filing No. 15 at 6.) Ms. Schofield argues that the ALJ should have considered her discussions with Dr. Gould regarding the repetitive motions and movements required as a hairdresser. However, this argument is unavailing because the ALJ determined that Ms. Schofield could not do her past work as a hairdresser and limited her RFC to light work with additional limitations.

The ALJ sufficiently considered Ms. Schofield's carpal tunnel syndrome and fibromyalgia and the medical evidence and testimony regarding those impairments when he reached his RFC and disability determinations. The determinations were supported by substantial evidence from the record.

**B.    The ALJ adequately considered and weighed the medical opinion of consultative examiner Dr. Djodjeva.**

Ms. Schofield argues that the ALJ failed to fairly consider and weigh the medical opinion of consultative examiner Dr. Djodjeva. She also contends that the amount of weight the ALJ placed on the opinion of Dr. Fischer is inappropriate because he did not have the benefit of reviewing the opinion of Dr. Djodjeva and thus did not base his findings on a complete record (Filing No. 15 at 13).

An ALJ "is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning." *Dixon*, 270 F.3d at 1176. In this case, the ALJ noted that Dr. Djodjeva's functional capacity assessment was inconsistent with the objective medical evidence

in the record and with the findings in Dr. Djodjeva's own report. For example, Dr. Djodjeva noted limited findings such as pain and decreased range of motion in the neck and lower back. However, she noted normal gait and posture, gross and fine finger manipulation, and sensory function. Dr. Djodjeva also noted that Ms. Schofield could engage in a wide range of activities. Despite these findings, Dr. Djodjeva opined that Ms. Schofield had a limited functional capacity of standing and walking for twenty minutes at a time for a total of one hour in a workday. The ALJ specifically explained that Dr. Djodjeva's functional capacity assessment was inconsistent with the medical evidence as a whole and inconsistent with some of her own findings, especially in regard to a normal gait and normal neurological functioning and good stability. Because of these inconsistencies, the ALJ gave Dr. Djodjeva's opinion only partial weight.

Further, the ALJ acknowledged that portions of Dr. Djodjeva's functional capacity assessment were consistent with her clinical findings and the totality of evidence, which was considered and reflected in the ALJ's RFC analysis. The ALJ explained his reasoning for the weight given to Dr. Djodjeva's opinion, and the ALJ supported his determination with substantial evidence from the record.

Ms. Schofield argues the ALJ chose Dr. Fischer's opinions over the opinions of Dr. Djodjeva "without any real rationale." (Filing No. 15 at 14.) "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). While the ALJ did give significant weight to the opinions of Dr. Fischer, a non-examining physician, the ALJ's findings were supported by more than just Dr. Fischer's opinions. The ALJ pointed to substantial evidence that Ms. Schofield's impairments are reasonably controlled with medication, that she is able to participate in several

15

activities of daily living with little restriction, and that while she does have severe impairments, those impairments do not cause an inability to work at a light level with specific, additional work limitations.

## V.  CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Ms. Schofield's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 8/10/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
CHARLES D. HANKEY LAW OFFICE
charleshankey@hankeylawoffice.com

Melissa A. Davidson
CHARLES D. HANKEY LAW OFFICE
mdavidson@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov